THE STATE ON THE RELATION OF M. A. FOUTE, praying for Writ of Prohibition, *v.* THE JUDGE OF THE FIRST DISTRICT COURT OF NEW ORLEANS and BENJAMIN S. TAPPAN.

All cases are excluded from the jurisdiction of the First District Court of New Orleans, which do not come within the definition of criminal cases, as found in the sixth section of the Acts of 1853 and 1855—" prosecutions for crimes, misdemeanors and offences committed within the limits of the First Judicial District."

The 42d section of the Act of 1855 does not give the First District Court of New Orleans jurisdiction to try a contested election of District Attorney of the parish of Orleans.

If the 42d section of the Act of 1855 applies to the parish of Orleans, the section would be satisfied, without conflicting with previous statutes, by filing the petition contesting the election of District Attorney for the parish of Orleans in any of the five district courts of general jurisdiction in the parish of Orleans.

The First District Court, being a court of limited powers, any extension of its jurisdiction must be strictly construed, and should not be stretched by implication to cases not named.

ON application for a Writ of Prohibition.

R. *Hunt*, for petitioner.

BUCHANAN, J.* (MERRICK, C. J., absent.) The defendant, *Tappan*, filed a petition in the First District Court of New Orleans, contesting the election of the relator to the office of District Attorney for the parish of Orleans.

The relator excepted to the jurisdiction of the District Court, and the court having overruled the exception, the relator has applied to this court for a writ of prohibition.

To this application the Judge of the First District Court of New Orleans has filed an answer, in which he takes the grounds—

1. That the contest of an election is not " a civil case," and therefore that he is not prevented by the organic law of his court from entertaining jurisdiction.

2. That jurisdiction of this contested election case has been given to his court by an Act " Relative to Elections," approved 15th March, 1855.

3. That, even supposing the jurisdiction has not been expressly conferred by law, yet he is justified in assuming jurisdiction, in order to prevent a failure of justice.

We will examine these points in the order in which they are here stated. And first, of the jurisdiction of the First District Court of New Orleans, as defined by the law of its organization.

The First District Court of New Orleans is one of the six district courts created by an Act of the Legislature, entitled " An Act to organize District Courts for the Parish and City of New Orleans," approved April 28th, 1853. Session Acts, p. 190.

The sixth section of that Act reads: " The First District Court of New Orleans shall have original and exclusive cognizance of, and shall hear and determine, according to law, all prosecutions upon all crimes, misdemeanors and offences whatever, which have been, or which shall be committed within the limits of the First Judicial District; except only such minor offences as shall by law be referred to the jurisdiction of the Recorders of the city, or other police tribunal that may be hereafter organized by law."

---

* *Kathman* v. *Watkins* was a case similar to this, and decided upon the same reasoning, in April, 1856.

And the 14th section: " All of the said district courts, organized under this Act, shall have and exercise concurrent jurisdiction of all civil cases whatever, which are not hereby specially referred to the particular jurisdiction of special courts, except the First District Court—the jurisdiction of which shall be confined exclusively to criminal cases."

In the general revision of the Statutes which took place in 1855, it was deemed necessary to reënact the Statute just referred to, which was done by an Act entitled " An Act relative to District Courts for the Parish and City of New Orleans," approved March 14th, 1855, in which Act the 6th and 14th sections of the Act of 1853, quoted above, are found, repeated verbatim in its 6th and 11th sections.

The provisions of these laws are free from all ambiguity. All cases are in terms excluded from the cognizance of the First District Court of New Orleans which do not come within the definition of criminal cases, as found in the 6th section of those two Acts—" Prosecutions for crimes, misdemeanors and offences committed within the limits of the First Judicial District." It is unnecessary, therefore, to follow the respondent into an investigation how far the contest of an election is to be viewed as a civil action. It is sufficient, upon this branch of respondent's answer, to say that such a proceeding is certainly not a "criminal case."

This brings us to the inquiry, whether the jurisdiction of the First District Court of New Orleans has been extended to such a case as this by the Act of 1855.

On this point the respondent relies upon sections 41 and 42 of the Statute. Session Acts of 1855, p. 415.

Section 41st directs petitions, contesting elections of Sheriff, Coroner or Clerk of the parish of Orleans, to be presented to the First District Court of New Orleans; and section 42 provides that "any candidate for either of the offices of Clerk of the District Court, Parish Recorder, Sheriff, Coroner, Justice of the Peace, and any other parish officer that may be elected by the people intending to contest an election, shall, within ten days after the election, file, in the district court for the parish in which the election may have been held, a petition," &c.

There are two features in this section which seem to indicate that it was intended for the country parishes, and not for New Orleans :. First, it speaks of the election of Parish Recorder—an elective officer existing in every parish of the State, except New Orleans, in which parish the duties of that office are divided between two officers, the Recorder of Mortgages and Register of Conveyances, who are neither of them elected by the people ; second, the section speaks of *the* district court for the parish—a form of expression which seems to suit only those parishes where there is but one district court.

It has also been made a matter of great debate whether the District Attorney be a *parish officer*, although the parish of Orleans be co-extensive with the First Judicial District.

But we regard these points as immaterial : for, granting that the 42d section applies to the parish of Orleans, and that the District Attorney in this district is a parish officer, yet the section does not give the First District Court of New Orleans—which is a court of a limited and exclusive jurisdiction—the right of entertaining the petitions to which it refers; and, as there are in that parish no less than five other district courts, of general jurisdiction, the section would be

satisfied, without conflicting with the previons statutes, by filing the petition con-  <span style="float:right">STATE<br>v.<br>JUDGE 1st DIS.CT.</span>
testing this election, in any of those courts.  The respondent infers, from the
fact that jurisdiction was expressly conferred upon his court, by the 41st sec-
tion, to try contested elections of Sheriff, Coroner or Clerk; and from the other
fact, that those officers are mentioned among others in the 42d section, that,
therefore, the Legislature must be taken to have intended that contests of elec-
tions of all the offices mentioned in section 42, other than those also mentioned
in section 41, should be tried (if in the parish of Orleans) in the First District
Court of New Orleans.  But the contrary would seem to be the logical inference,
from that court being named in the 41st and not named in the 42d section.
*Inclusio unius est exclusio alterius.*  The court being, in its organization, a court
of limited powers, any extension of its jurisdiction must be strictly construed,
and should not be stretched by implication to cases not named.

We apprehend no danger of a denial of justice, from the incapacity of the
First District Court of New Orleans to entertain a petition contesting an elec-
tion of District Attorney in this parish.

It is therefore adjudged and decreed that the writ of prohibition herein issued
be made perpetual.